# Edward Goodman *v.* Delaware & Hudson Canal Company, Appellant.

*Negligence—Railroads—Injury to fireman—Master and servants—Wild-cat train.*

In an action by a fireman against his employer, a railroad company, to recover for personal injuries, the evidence showed that his train, while lying in the yard of the station, was given an order to " wild cat," which gave it the right of way outside the yard, subject only to the requirement to keep a lookout for regular scheduled trains.   Inside the yard the rule was to keep the train under such control that it could be stopped within half the distance that the engineer could see along the track.   The evi-

dence tended to show that while the train was moving, near the limit of the yard, an irregular excursion train was backed up on the same track, and the engineer of plaintiff's train, not seeing it on account of escaping steam from a passing engine, ran into it, by which plaintiff was injured; but the evidence was conflicting as to whether the collision occurred outside or inside of the yard. *Held,* that the question was for the jury.

It was not error for the court to charge in such case : "If the train master was merely directing the movements of a train which was on scheduled time, he might be acting in the capacity of a conductor, and therefore, in that case, would be a co-employee, and the company would not be responsible for his act in that position, or his acts done in that capacity. But if, in putting the train upon the track in that place, he was assuming the duties of his office of train master, by putting a train, an irregular train, upon the track, not upon scheduled time, and orders had been issued by his subordinate giving him the right of way over the same track, then he was exercising the duties of his office as train master, and his acts were the acts of the company, and that is for you to find as a fact."

Argued Feb. 26, 1895.   Appeal, No. 49, Jan. T., 1895, by defendants, from judgment of C. P. Wayne Co., May T., 1893, No. 52, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ.  Affirmed.

Trespass for personal injuries. Before SEARLE, P. J., of the 34th judicial district, specially presiding.

At the trial it appeared that defendant operated a double track railroad between Scranton and Carbondale.   An extension of this railroad northerly from Carbondale is owned by the New York, Lake Erie & Western Railroad Company, and used both by that company and by the defendant.   The defendant also owns and operates a narrow gauge gravity railroad, extending from Carbondale to Honesdale.   In the summer season it carries many excursion parties from Scranton, Wilkes-Barre and other points south of Carbondale to Farview, on the line of the gravity railroad, transferring the excursionists from the cars of the broad gauge road to that of the narrow gauge road, and vice versa, at the Carbondale station.   On August 24, 1887, Edward Goodman, the plaintiff, was fireman on defendant's locomotive engine No. 35, engaged in drawing coal trains between Carbondale and points south.   He had been so engaged for six years prior to the date of the accident, and had been on this particular engine for four years prior to the date of the accident.   During these four years his engineer was

Robert Van Storch, and his conductor Otto Meyers, both of whom were on the train with him at the time of the accident.

On the day in question this crew had brought a train of loaded coal cars from a point on the road south of Carbondale, and had put their train away in the Carbondale yard. They then received orders from the train dispatcher to " wild cat to Green Ridge," a point some miles south of Carbondale. This gave it, according to the testimony in the case, the right to run twelve miles an hour after leaving the limit of the Carbondale yard, running cautiously by stations, looking out for and avoiding all trains running on schedule time.

At about 5.45 P. M., with engine No. 35, a caboose, the crew already named, and two brakemen, they left No. 1 switch and started south through the Carbondale yard on the south-bound track, toward the depot. The Carbondale yard seemed to have no definite limits.

At about the same time a train of empty excursion cars, pushed by an engine, came backing up the south-bound track, at a rate of from five to ten miles an hour, to take its position in front of the depot and be in readiness for the excursionists from Fairview, who were to be transferred to it at that point from the gravity railroad. Engine 35 ran into the rear of this train of empty excursion cars when it was about reaching its place in front of the Carbondale depot. The front end of the boiler of No. 35 was broken in, some flues were forced out to the rear, and escaping steam caused injuries to the fireman, Edward Goodman, who at the time of the collision was in the tank of the engine.

Defendant claimed that the collision occurred within the limits of the Carbondale yard. The yard rule, relating to speed of trains in the yard and on the tracks where the collision occurred, was that trains should move at such a rate of speed that they could be stopped within half the distance the engineer or his trainmen could see ahead of them along the track.

The engineer and conductor of plaintiff's train made the following report:

" GREEN RIDGE, August 24, 1887.

" MR. MANVILLE, Sir: We had orders to-night to wildcat to Green Ridge, six o'clock, P. M.; we backed in No. 1 switch, and coupled on caboose ; we laid in the switch until Erie ac-

commodation train pulled out from the depot on the south bound track. When they passed we came out of the switch and started for Green Ridge. When just north of the depot, engine No. 72, with eight or nine passenger coaches, came backing up the south bound track, and Mr. Von Storch not seeing them until they were within two car lengths from him, on account of the steam from passing engine on the north bound track, and ran into him before he could stop, breaking the end of the passenger coach, and breaking the headlight and bumpers off, and the front end of the engine in, and the flue blew out of the fire-box, and the fireman, Ed. Goodman, was scalded badly, in getting off the engine. There was no flag out, nor no one on the hind end of the cars when they were backing up, and we knew nothing of the train being down there. I was in the caboose after shutting the switch, and was just going to copy my train on the book, when I heard him whistle brakes. I only had time to get off after putting .caboose break on when they struck. We had engine No. 35.

> "ROBERT VON STORCH, Engineer,
> " OTTO MEYERS, Conductor."

Defendant's points were among others as follows:

" 2. The plaintiff has not shown that the company was guilty of any negligent act charged against it in the declaration in this case as a ground of action, therefore he cannot recover. *Answer:* This point is refused." [1]

" 3. The plaintiff has not shown that the neglect by the defendant of any duty legally imposed upon it was the proximate cause of plaintiff's injuries, therefore he cannot recover. *Answer:* This point is refused." [2]

" 6. The company's train master, S. A. McMullen, in directing the movements of the excursion train about the Carbondale yard and depot before she had received her train orders, was acting as a co-employee with the plaintiff. *Answer:* This point is refused. The evidence, as I remember it in this case, leaves it as a question of fact for you whether he was. If he was merely directing the movements of a train which was upon schedule time, he might be acting in the capacity of a conductor, and therefore, in that case, would be a co-employee, and the company would not.be responsible for his act in that position, or his acts done in that capacity. But, if in putting the train

upon the track in that place, he was assuming the duties of his office of train master of putting a train, an irregular train, upon the track, not upon schedule time, when orders had been issued by his subordinate giving him the right of way over that same track, then he was exercising the duties of his office as train master, and his acts were the acts of the company, and that is for you to find as a fact." [3]

" 9. It was the duty of the plaintiff to show that the risk to which he was subjected at the time of the accident and which resulted in his injuries, was an unusual and extraordinary risk, so far as the defendant was concerned. He has not done so and is not entitled to recover in this case. *Answer :* This is refused, as it would require us to take the case entirely away from the jury." [4]

" 11. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer :* That is refused." [5]

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Homer Greene*, for appellants, cited: Kohler v. R. R., 135 Pa. 357; Lynch v. Erie, 151 Pa. 381; Wrasse v. Traction Co., 146 Pa. 417; Sandford v. R. R., 136 Pa. 95; Ross v. Walker, 139 Pa. 50; National Tube Works v. Bedell, 96 Pa. 178; Lehigh Valley Coal Co. v. Jones, 86 Pa. 439; R. R. Co. v. Bell, 112 Pa. 400; Weger v. Penna. R. R., 55 Pa. 460; Rumsey v. R. R., 151 Pa. 76; Derr v. Lehigh Valley R. R., 158 Pa. 365; Titus v. R. R., 136 Pa. 626; Northern Central R. R. v. Husson, 101 Pa. 8; R. R. v. Neer, 26 Ill. App. 356; 14 Am. &. Eng. Ency. of Law, 846.

*F. B. Kimble, A. T. Searle* with him, for appellee, cited on the question of defendant's negligence : Lewis v. Seifert, 116 Pa. 628; Slater v. Jewett, 85 N. Y. 62; Abel v. D. & H. C. Co., 103 N. Y. 581; Bushby v. R. R., 107 N. Y. 374; Hydraulic Works v. Orr, 83 Pa. 332; North Penna. R. R. v. Kirk, 90 Pa. 15; Johnson v. West Chester R. R., 70 Pa. 357; Born v. Plank Road Co., 101 Pa. 336; Neslie v. Pass. R. R., 113 Pa. 300; Phila. & Reading R. R. v. Killips, 88 Pa. 405; First Nat.

Bank v. Wirebach, 106 Pa. 47; Carlisle Borough v. Brisbane, 113 Pa. 544; Cayzer v. Taylor, 10 Gray, 274; Crescent Twp. v. Anderson, 114 Pa. 643; Keegan v. West. R. R., 8 N. Y. 175; Paulmier v. Erie R. R., 34 N. J. L. 151; Gray v. Scott, 66 Pa. 345; Lynch v. Erie City, 151 Pa. 380; Wrasse v. Citiizens Traction Co., 146 Pa. 417; Kohler v. Penna. R. R., 135 Pa. 346; Mullan v. Steamship Co., 78 Pa. 25; Flike v. R. R., 53 N. Y. 549; R. R. v. Bell, 112 Pa. 400; Crispin v. Babbitt, 81 N. Y. 516; Tissue v. R. R., 112 Pa. 91; Berea Stone Co. v. Kraft, 31 Ohio, 287; Ormond v. Holland, 96 Eng. Com. Law, 102; Sherman & Red. on Neg. sec. 89; Wharton on Neg. sec. 205; Rummell v. Dilworth, 111 Pa. 343; Woodward v. Shumpp, 120 Pa. 458.

PER CURIAM, April 8, 1895:

To have directed a verdict for the defendant company, as requested in its 11th point, would have been manifest error. The testimony tending to prove that defendant's negligence was the proximate cause of plaintiff's injury was quite sufficient to not only carry the case to the jury, but to justify them in finding as they did. The case was carefully and ably tried. There appears to be nothing whatever in the record to justify a reversal of the judgment.

Judgment affirmed.